**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RICHARD CHARLES SCHMIDT,** | § | |
| **TDCJ No. 02404422,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-24-CV-1437-FB** |
| | § | |
| **ERIC GUERRERO, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is *pro se* petitioner Richard Charles Schmidt's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges the constitutionality of his 2022 state court conviction for continuous sexual abuse of a young child, arguing, among other things, that the conviction was the result of prosecutorial misconduct and ineffective trial counsel. Also before the Court are petitioner's supplemental memorandums in support, respondent Eric Guerrero's Answer, and petitioner's Reply thereto.[2]

Having reviewed the record and pleadings submitted by both parties, the Court concludes petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

---

[1]    ECF No. 6.

[2]    ECF Nos. 2, 14, 18 and 23.

## I. <u>Background</u>

A.      <u>The Offense</u>

In its opinion affirming petitioner's conviction on direct appeal, the Texas Third Court of

Appeals accurately summarized the evidence presented at petitioner's trial:

> In a three-count indictment, the State charged [petitioner] with continuous sexual abuse of a young child (Count I), aggravated sexual assault of a child (Count II), and indecency with a child by contact (Count III).  Count I alleged that [petitioner] committed two or more acts of sexual abuse against victims "Amy Parker" and "Jill Johnson."[3]
>
> Count I alleged three predicate acts of abuse: (1) intentionally or knowingly causing the penetration of Amy's sexual organ with [petitioner]'s hand or fingers; (2) with intent to arouse or gratify the sexual desire of any person, engaging in sexual contact with Amy by touching her genitals or any part of her genitals with [petitioner]'s hand or fingers; and (3) with intent to arouse or gratify the sexual desire of any person, engaging in sexual contact with Jill by touching her genitals or any part of her genitals with [petitioner]'s hand or fingers.
>
> The two predicate acts of abuse against Amy alleged in Count I were the same offenses alleged in Counts II and III.  Count II alleged that [petitioner] intentionally or knowingly caused the penetration of Amy's sexual organ with his hand or finger.  Count III alleged that [petitioner], with intent to arouse or gratify the sexual desire of any person, engaged in sexual contact with Amy by touching the genitals or any part of her genitals with [petitioner]'s hand or fingers.
>
> The case proceeded to a jury trial.  Amy testified that in July 2015, when she was thirteen years old, she and her family went tubing in the Comal River in New Braunfels.  Amy was with her mother, her stepfather, and her sister, and before they got into the water, they met up with [petitioner], who was her stepfather's brother, and two other men.  The group rented tubes, got into the water, and then went down a "water slide area" that "kind of just shoots you off to the next part of the river."  Amy "kind of flew in one direction" and was briefly separated from the group, "but somebody found [her] and then [they] all kind of got back together" and tied their tubes together.  [Petitioner]'s tube was next to and in front of Amy's tube.
>
> Amy recounted that at some point after that, [petitioner] "started, like, massaging [her] feet."  Amy then switched from sitting on top of her tube to "being

---

[3]      The names of both victims are pseudonyms.  Amy Parker was the pseudonym used in the indictment to identify the first victim.  A pseudonym was not used in the indictment to identify the second victim.  We have nevertheless used a pseudonym to identify her as well because she was a minor at the time of the offense.  *See* Tex. R. App. P. 9.10(a)(3); *see also* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

under the water" and "kind of swimming." Amy's arms were "over the tube" while her legs were "hanging in the water under the tube." [Petitioner] was "sitting on top of [his] tube" and continuing to touch her. She explained, "At a certain point, once I put my body under the water, he started trying to get, like, underneath my bathing suit and, like, put his fingers underneath in the crotch area." Amy added, "He got his fingers underneath the bathing suit and then kind of tried to get his fingers inside of me." She could feel his hand on her vagina, "trying to get inside of [her] vagina." Amy kicked her leg, causing [petitioner]'s hand to move away, but [petitioner] continued to try to get his hand inside of her vagina and eventually did so, putting his finger inside her vaginal canal. At that point, Amy "just kind of tried to, like, swim away." She could not remember if [petitioner] continued to touch her after that.

That night, the family stayed at a hotel. Amy testified that [petitioner] was not supposed to stay in the hotel room with them, but he did. The room had two beds. Amy was sleeping alone in one bed, her mother, stepfather, and sister were sleeping together in the other bed, and [petitioner] was sleeping on the floor to the left of Amy's bed. Amy recounted that at some point that night, someone got into the bed with her. She explained,

> We all went to sleep, and I remember kind of, like, feeling pressure on the bed like somebody was trying to get into the bed. And I kind of woke up a little bit and felt like somebody was try—not trying to touch me, but somebody had started going to touch me again.

In response, Amy "kind of just, like, scooted over to the other side of the bed and stayed awake for a little bit." Amy believed that the person who had gotten into bed with her was [petitioner], although she acknowledged that she did not see his face. Approximately one year later, Amy told her mother about the abuse, and her mother reported the abuse to the police.

The incident involving Jill occurred after that. Jill testified that in December 2016, when she was thirteen years old, she went over to [petitioner]'s house for a sleepover with [petitioner]'s daughter, with whom Jill was friends at the time. Jill recounted that she, [petitioner], [petitioner]'s daughter, and [petitioner]'s son "had all settled down for the night" and "had sat down on his couch" to watch movies. [Petitioner] was sitting next to her, and in the middle of a movie, after [petitioner]'s daughter and son had fallen asleep, [petitioner] "started to touch" Jill. She explained,

> The first initial touch was on my thigh, and very close to my inner thigh going up towards my vagina . . . He was groping me, grabbing and going into the underneath part of my thigh . . . He attempted to go under my clothes. I was in a track suit, sweatpants and hoodie. And he had went along the belt lining of the sweatpants, and he had tried to get underneath them. And I had moved his hand away, and then following moving his hand away I had attempted to grab my phone and he pushed my phone away. He slapped my hand. And

then he groped my breast on the side, trying to grab full of my breast. And this was on my right side breast because he was sitting to the right of me. He had tried going under my shirt, and then he went back down to my thigh again, and he had grabbed fully in a cupping motion of my vagina and had fully grabbed the outer lips of my vagina.

Jill testified that most of [petitioner]'s touching, including of her vagina and breast, occurred "over the clothing," although there was "skin-to-skin contact" when [petitioner] "went under the belt lining."

Jill further testified that "maybe a couple of minutes" later, [petitioner] got up to use the restroom. Jill took that opportunity to text her mother, who lived "right next door" to [petitioner], and asked her to come and get her. In the text message, a copy of which was admitted into evidence, Jill wrote, "Mom please come get me hurry." One minute later, she added, "Please." Jill's mother "flew right over as soon as she got the text" and "pound[ed] on the door," waking [petitioner]'s daughter and son. [Petitioner] "stumbled out of the bathroom," "put on a groggy voice and answered the door finally," "trying to act tired to [Jill's] mom." Jill "slipped past him as soon as the door opened," "grabbed her [mother] by her hand and immediately told her [she] wanted to leave." When they returned home, Jill told her mother what had happened, and her mother reported the incident to the police the next morning.

[Petitioner] testified in his defense and denied ever touching Amy or being near her on the river. [Petitioner] admitted touching Jill's leg on the night of the sleepover but claimed that the touching occurred accidentally as he was getting up from the couch. Other witnesses for the defense included [petitioner]'s fiancé, Hope Fischer, who testified that she and [petitioner] had attempted to recreate the tubing incident alleged by Amy and that [petitioner] had been unable to reach Fischer's private parts at that time and could "barely" touch the outside of her thigh; Adriana Juarez, a private investigator hired by [petitioner]'s counsel who had also attempted to recreate the tubing incident and who testified that during the recreation, [petitioner] was only able to reach her wrist; Matthew Hoyt, the owner and manager of the tubing company that rented the tubes to the group on the day in question and who testified that it would be "highly difficult" for a person sitting in one tube to reach over his tube and then under the tube of a person next to him and touch that person's genitals; Donavin Baldivia, a childhood friend of Amy's who testified that Amy told him that [petitioner] had sexually assaulted her in the river but that he did not believe Amy to be an honest person at the time; and Eric Ford, one of the men who was floating in the river with [petitioner] on the day of the incident with Amy and who testified that he did not see [petitioner] anywhere near a girl while they were in the river.

[Petitioner]'s daughter and son, who at the time of trial were seventeen and fourteen years old, respectively, also testified.  Each testified that they were sitting on the couch on the night of the incident with Jill and that they did not see [petitioner] touch Jill.  However, during the State's cross-examination of [petitioner]'s daughter, a recording of a forensic interview of her, taken in December 2016 following [petitioner]'s arrest, was admitted into evidence.  During that interview, [petitioner]'s daughter stated that her father had accidentally touched Jill on the couch that night.  When confronted with her statement in the interview, [petitioner]'s daughter maintained, "I did not see my dad touch [Jill] at all, and I don't recall saying that."

Amy's stepfather testified as a rebuttal witness for the State.  He testified that he saw [petitioner] and Amy floating next to each other on the river.  He also corroborated Amy's account of the sleeping arrangements at the hotel.

*Schmidt v. State*, No. 03-22-00444-CR, 2024 WL 735176, at *1–3 (Tex. App.–Austin, Feb. 23, 2024).

## B.    <u>Procedural History</u>

After hearing all of the evidence, a Comal County jury convicted petitioner of continuous sexual abuse of a young child (Count I) and indecency with a child by contact (Count III), but the trial court later vacated Count III upon the State's motion prior to sentencing.[4]  The jury acquitted petitioner of aggravated sexual assault of a child (Count II).[5]  Following a separate punishment hearing on Count I only, the jury sentenced petitioner to life imprisonment.  *State v. Schmidt*, No. CR2017-383 (207th Dist. Ct., Comal Cnty., Tex. July 13, 2022).[6]

The Texas Third Court of Appeals affirmed petitioner's conviction on direct appeal.  *Schmidt v. State*, No. 03-22-00444-CR, 2024 WL 735176 (Tex. App.–Austin, Feb. 23, 2024).[7]  The Texas

---

[4]    ECF Nos. 11-3 at 14-16 (Verdict Forms), 11-17 at 5-7 (trial transcript).

[5]    ECF No. 11-4 at 1-3 (Judgment of Acquittal).

[6]    ECF Nos. 11-3 at 17-19 (Judgment), 11-17 at 80 (trial transcript).

[7]    ECF No. 11-20 (Memorandum Opinion).

Court of Criminal Appeals then refused his petition for discretionary review. *Schmidt v. State*, No. PD-0158-24 (Tex. Crim. App. April 24, 2024).[8]

Following his direct appeal proceedings, petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief. *Ex parte Schmidt*, No. 96,026-01 (Tex. Crim. App.).[9] Based, in part, on the findings of the state habeas trial court, the Texas Court of Criminal Appeals eventually denied the application without written order on October 23, 2024.[10] In December 2024, petitioner initiated the instant proceedings by filing an unsigned petition for federal habeas corpus relief along with an unsigned supplemental memorandum in support.[11] Petitioner's amended federal petition and amended supplemental memorandum followed shortly thereafter.[12]

## II.  Petitioner's Allegations

In his amended petition and supplemental memorandum, petitioner set forth the following claims for relief:

1.      The state court of appeals erred in determining that Section 21.02 of the Texas Penal Code was not unconstitutional as applied to petitioner;

2.      The prosecution knowingly and willingly used perjured testimony to obtain a conviction;

3.      The prosecution committed fraud by using fabricated information to obtain a conviction;

4.      His trial counsel rendered ineffective assistance by failing to challenge the veracity of the affidavit supporting the arrest warrant;

---

[8]      ECF No. 11-32 (Notice); *see also* **http://www.research.txcourts.gov**, search for "Schmidt, Richard" last visited June 20, 2026.

[9]      ECF No. 16 (Sealed).

[10]      ECF No. 11-39 (Notice).

[11]      ECF Nos. 1, 2.

[12]      ECF Nos. 6, 14.

5.       His trial counsel rendered ineffective assistance by failing to admit documents into the record that could impeach the testimony of the two complainants;

6.       His trial counsel rendered ineffective assistance by failing to object to the trial's venue;

7.       His trial counsel's affidavit, along with counsel's errors, establish ineffective assistance; and

8.       His conviction violated Double Jeopardy principles.

### III.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself.  *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a

"substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV.  Analysis

### A.    Texas Penal Code § 21.02(b) (Claim 1)

Petitioner first challenges the constitutionality of Section 21.02(b) of the Texas Penal Code as applied to him.[13] This statute, which criminalizes the continuous sexual abuse of a young child or children, provides that "[a] person commits an offense if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims." Tex. Penal Code § 21.02(b).

Petitioner contends that he should not have been charged under this statute because he was accused of isolated acts against two different people. Under the plain language of the statute, petitioner argues, two or more acts against one or more victims is required—not one or more acts against two or more victims. According to petitioner, "never in the history of [the statute] has an isolated act [against] two different people, in two different counties, from two different years, constituted one charge."[14]

---

[13]        ECF No. 14 at 5-13.

[14]        ECF No. 14 at 5.

Petitioner raised this allegation during his direct appeal proceedings, but the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision" providing particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Wooten v. Lumpkin*, 113 F.4th 560, 566 (5th Cir. 2024). In other words, the Court must look to the last reasoned state judgment that considered and rejected petitioner's allegation when reviewing the claim under AEDPA's deferential standard.

In this case, the last reasoned state court decision was issued by the Texas Third Court of Appeals on direct appeal. In rejecting petitioner's arguments, the court concluded that "the plain language of the statute" clearly permits a conviction for continuous sexual abuse when, as here, there are two victims and the State proves one act of abuse per victim. *Schmidt v. State*, No. 03-22-00444-CR, 2024 WL 735176, at *5 (Tex. App.–Austin, Feb. 23, 2024). Indeed, the statute provides that "[a] person commits an offense if . . . the person commits two or more acts of sexual abuse, *regardless of whether the acts of sexual abuse are committed against one or more victims.*" Tex. Penal Code § 21.02(b) (emphasis added).

Petitioner fails to demonstrate the intermediate appellate court's decision was either contrary to or an unreasonable application of clearly established federal law. Petitioner points to no Supreme Court precedent establishing the unconstitutionality of applying § 21.02(b) in situations, like this one, involving isolated acts against multiple victims. Because the Supreme Court has never held such an application of the statute unconstitutional, there were no holdings for the state court to contravene or unreasonably apply. *See Williams v. Taylor*, 529 U.S. 362, 381 (2000) ("If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle."). Thus, viewing

petitioner's allegation under the deferential standard that applies on federal habeas review, relief is unwarranted.

**B.    Prosecutorial Misconduct (Claims 2 and 3)**

Petitioner next contends that the State committed prosecutorial misconduct in order to obtain a conviction. Specifically, petitioner asserts that the prosecution (1) knowingly and willingly used false testimony from one of the complainants, and (2) made two "false and fraudulent" statements during closing arguments.[15] Both of these allegations were raised and rejected during petitioner's state habeas corpus proceedings. As discussed below, the claims lack merit, thus the state court's rejection was not unreasonable.

1.    False Testimony (Claim 2)

Petitioner claims that the State knowingly allowed perjured testimony from complainant Jill Johnson to go uncorrected, resulting in a violation of his due process rights under *Napue v. Illinois*, 360 U.S. 264 (1959). According to petitioner, Jill's testimony that petitioner "cupped" her vagina and "fully grabbed the outer lips of [her] vagina"[16] was false and contradicted by the following police records: (1) the Waller Police Department Incident Report, (2) Officer Leah Sipe's body camera footage and initial report, (3) Jill's affidavit, (4) Jill's child assessment video, and (5) Jill's Child Protective Service (CPS) records. Petitioner contends these records demonstrate that Jill never claimed that her vagina was touched prior to her live testimony, thus rendering her testimony false.

For petitioner to succeed on his claim, he "must show that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (quoting *Napue*, 360 U.S. at 269). Under *Napue*, a petitioner seeking to obtain habeas relief must show that (1) the testimony was false, (2) the

---

[15]    ECF No. 14 at 13-24.

[16]    ECF No. 11-14 at 77.

prosecution knew that the testimony was false, and (3) the testimony was material.  *United States v. Dvorin*, 817 F.3d 438, 451-52 (5th Cir. 2016); *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007).  False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, petitioner argues that Jill's testimony regarding the extent of petitioner's touching was false because she never asserted that he touched her vagina in prior police records.  But perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements, and the trial testimony of prosecution witnesses. *See  Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Rather, "omissions merely go to the credibility of the witnesses, an area within the province of the jury."  *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).

Petitioner fails to demonstrate a due process violation because he simply points out alleged differences between the statements Jill gave to police immediately following the offense and the more detailed testimony she later gave at trial.  Such inconsistencies do not demonstrate perjury. *See  Koch*, 907 F.2d at 531.  As such, the state court's rejection of this allegation was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. *See Richter*, 562 U.S. at 100-01.  Relief is therefore denied.

    2.    <u>Closing Argument</u> (Claim 3)

Petitioner also alleges that the prosecution committed misconduct by knowingly and willingly making two fraudulent statements during closing argument to obtain a conviction.  In the first statement, the prosecution erroneously asserted that the offense against Jill occurred in Waller County and not the City of Waller:  "The continuous [charge] includes [Jill], and that includes an

offense that occurred in Waller County, Texas."[17] The second statement similarly asserts that the offense against Jill occurred in Waller County: "And that's all in Waller County, folks. That's why, again, we don't have charges for [Jill] here for indecency with a child. That's not in Comal County. We get to apply that in the continuous sexual abuse portion of this."[18]

Petitioner contends that the prosecution intentionally made these false statements during closing argument in order to persuade the jury that he had already been convicted in another county of indecency with Jill. Such allegations of prosecutorial misconduct during the closing arguments of a trial are analyzed in two steps. *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted). The first is to evaluate whether the prosecutor made an improper remark. *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted). If so, the second step is to determine whether the defendant suffered prejudice. *Id*.

The record in this case indicates that the prosecution erroneously indicated on two occasions that the offense against Jill occurred in Waller County. Far from being intentional, however, it appears that the prosecutor simply misspoke and stated the offense occurred in Waller County instead of the city of Waller, which is located in Harris County. Both mistakes occurred while the prosecutor was attempting to explain to the jury how petitioner could be prosecuted in Comal County for an offense that did not occur there. And contrary to petitioner's argument, at no point during closing argument did the prosecution state or imply that petitioner had already been convicted of indecency against Jill in another county. Thus, there is no indication from the record that the prosecution intentionally made false statements to the jury.

Even if the statements could be considered improper, this Court finds nothing prejudicial about them. This second inquiry sets a high bar: "Improper prosecutorial comments constitute

---

[17]    ECF No. 11-16 at 25.

[18]    *Id*. at 31.

reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir. 2005)). A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id*. Thus, in deciding whether serious doubt infects the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id*. (quoting *United States v. Mares,* 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

Here, the prejudicial effect of the prosecutor's erroneous statements was minimal, as he simply misspoke when stating the offense against Jill occurred in Waller County as opposed to the city of Waller. Again, the prosecutor did not imply that petitioner already had a separate conviction in Waller County—rather, he attempted to explain how an offense committed against Jill in the city of Waller could be prosecuted in Comal County. Given that the jury was well-aware that the offense against Jill occurred in the city of Waller, there is little likelihood that the error impacted the jury's verdict. *See* ECF Nos. 11-14 at 57 (Jill's mother testifying that she lived in "Waller, Texas"); 11-15 at 98-99 (petitioner's trial counsel also mistakenly referring to the offense against Jill as occurring in "Waller County", 133 (petitioner's son testifying his father "was accused of a crime in Waller, Texas"), 148 (petitioner's fiancé acknowledging the alleged incident happened in Waller, Texas), 171 (petitioner testifying that he lived in Waller).

Furthermore, the prosecution's erroneous statements likely had little prejudicial effect on the outcome of petitioner's trial given the overall strength of the State's case. This includes the detailed testimony of both victims—neither of whom knew the other—and testimony from three other witnesses that corroborated parts of their testimony. Since the prosecution relied heavily on the

victims' testimony, their credibility was thoroughly tested through the cross-examination, recall, and closing arguments of trial counsel.   The State's case was further bolstered by petitioner's incriminating statements to his daughter that he had "accidentally" touched both victims, as well as petitioner's own testimony wherein he essentially accused all five of the State's witnesses (and his own daughter) of lying.   As such, the magnitude of the prosecutor's remarks, if any, was slight compared to the strength of the evidence supporting the conviction.   *Ebron,* 683 F.3d at 140.   In other words, the prosecution's comments likely had very little prejudicial effect, and certainly did not cast "serious doubt on the correctness of the jury's verdict."   *Ebron,* 683 F.3d at 140.   Federal habeas relief is therefore unwarranted.

## C.   **Trial Counsel** **(Claims 4-7)**

In his next four allegations, petitioner argues that he received ineffective assistance from his trial attorney, Ashley Burleson.   Specifically, petitioner faults counsel for: (1) failing to challenge the veracity of the affidavit supporting the arrest warrant, (2) failing to impeach the false testimony of the two complainants, (3) failing to object to the trial's venue, and (4) the "totality of errors" committed during his representation.   These allegations were raised during petitioner's state habeas proceedings and ultimately rejected by the Texas Court of Criminal Appeals.   As discussed below, petitioner fails to demonstrate the state court's rejection of the allegation was either contrary to, or an unreasonable application of, Supreme Court precedent.

### 1.   The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland.*   *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).   Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance

was deficient and (2) this deficiency prejudiced his defense. *Id*. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions

were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

2.    The Affidavit (Claim 4)

In his first IATC claim, petitioner faults counsel for failing to challenge the veracity of Jill's affidavit which ultimately lead to his arrest.[19]  According to petitioner, Jill never alleged in her affidavit (or anywhere else prior to trial) that petitioner touched her vagina, only that he touched her breast and inner thigh, yet he was ultimately indicted under Count I for touching her genitals. Petitioner claims counsel should have requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to contest the validity of the affidavit based on these discrepancies.

Under *Franks*, an affidavit used to support a search or arrest warrant is presumed valid.  438 U.S. at 171.  However, an affidavit's veracity may be attacked by showing deliberate falsehood or reckless disregard for the truth by the affiant.  *Id.*  To meet this burden, the challenger must make a substantial showing that: (1) the affiant's allegations were deliberate falsehoods or made with a reckless disregard for the truth and (2) after the false statements are removed, the affidavit is not sufficient to support a finding of probable cause.  *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir. 2006).  The challenger bears the burden of showing, by a preponderance of the evidence, that a misstatement or omission "was more than mere negligence." *United States v. Runyan*, 290 F.3d 223, 234 n.6 (5th Cir. 2002).

In this case, the record is devoid of any evidence that any misstatements or omissions by Jill in her sworn statement, written on December 10, 2016, a day after the incident in question, were deliberately false or offered with reckless disregard for the truth.  Moreover, the issue of the affidavit's veracity was rendered moot following the issuance of the grand jury's indictment in May

---

[19]    ECF No. 14 at 27-30.

2017.[20]  At that point, even if counsel had requested a *Franks* hearing and won a determination that his arrest was made without probable cause, his situation would not change.  He would still remain in custody to face the charges against him from the indictment, which superseded the criminal complaint.  *See*, *e.g.*, *United States v. Cloud*, 2009 WL 10703353 (W.D. Tex. May 27, 2009).

For these reasons, counsel's failure to challenge the veracity of Jill's affidavit or request a *Franks* hearing did not fall below an objective standard of reasonableness or lead to prejudice.  "[C]ounsel has wide latitude in deciding how best to represent a client. . . ."  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).  And counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument.  *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).  Because any *Franks* challenge was not likely to succeed, counsel's performance in the matter was neither deficient nor prejudicial.  As such, the state court's denial of relief on this claim was not an unreasonable application of *Strickland*.  Relief is denied.

3.      Failure to Impeach (Claim 5)

Petitioner next faults counsel for failing to adequately cross-examine both of the complainants with records that he believes would have undermined their testimony.[21]  With regard to Amy, petitioner contends the following records should have been admitted: (1) a report from a New Braunfels Police Detective, (2) Amy's CPS report, and (3) Amy's child assessment video.  For Jill, petitioner believes counsel should have used the following records: (1) the Waller Police Department Incident Report, (2) Officer Leah Sipe's body camera footage and initial report, (3) Jill's affidavit, (4) Jill's child assessment video, and (5) Jill's CPS records.

---

[20]      ECF No. 11-1 at 6-7 (Indictment).

[21]      ECF No. 14 at 31-34.

Decisions regarding cross-examination are strategic and usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). Indeed, "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. 2016) (unpublished) (citing *Strickland*, 466 U.S. at 689). Here, while petitioner chastises counsel's performance during cross-examination for not using the above records, he fails to provide any specific argument or line of questioning that counsel should have undertaken. For this reason alone, Petitioner's conclusory and speculative allegation is unworthy of federal habeas relief. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Regardless, even if petitioner could establish that counsel erred by not cross-examining the complainants with their previous statements to police and CPS, he still fails to demonstrate that the alleged errors were prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

In rejecting petitioner's allegation, the state habeas trial court determined that petitioner's case was "hopeless" with little probability for a different outcome:[22]

> 5.      There was overwhelming evidence of [petitioner]'s guilt at trial, including the testimony of two separate child victims, numerous other witnesses and

---

[22]      ECF No. 11-36 at 8.

circumstantial evidence, incriminating statements [petitioner] made to his daughter, and [petitioner]'s non-credible testimony which the jury plainly rejected; [petitioner]'s case was equally or even more "hopeless" than cases like *Curtis v. State*. *See* 500 S.W.2d 478, 481-82 (Tex. Crim. App. 1973).

6.      Considering the totality of his representation, [petitioner]'s trial counsel zealously and effectively represented [petitioner] in [petitioner]'s essentially "hopeless case."

These conclusions, including the trial court's credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state courts' credibility determination. Indeed, petitioner has not established that the alleged errors were prejudicial because, as the record demonstrates, the State's case was strong and there was substantial corroborated evidence against petitioner. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). This evidence includes the testimonies of Amy and Jill, as well as the corroborating testimony presented by Amy's mother and stepfather, Jill's mother, and even petitioner's daughter, who testified to incriminating statements made by petitioner that he had "accidentally" touched both victims.

Because petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged errors, the state court's denial of petitioner's IATC allegations was not an unreasonable application of *Strickland*. Federal habeas corpus relief is therefore denied.

4.      Venue (Claim 6)

In Claim 6, petitioner contends counsel should have objected that venue was improper as it relates to the offense against Jill because the incident in question occurred in Harris County and not

in Comal County where he was prosecuted.[23]  Because the alleged offense did not occur in Comal County and he was not residing or apprehended there, petitioner argues that Comal County had no authority to add the alleged offense to his other existing charges.  He is mistaken.

Again, in Count I, petitioner was charged under the continuous-sexual-abuse statute, which provides that "[a] person commits an offense if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims."  Tex. Penal Code § 21.02(b).  Petitioner was accused of committing three predicate acts of abuse under this statute: (1) aggravated sexual assault against Amy, (2) indecency with a child against Amy, and (3) indecency with a child against Jill.  While the alleged offenses against Amy and Jill occurred in separate counties, nothing in § 21.02 requires that all of the predicate offenses occur in the same county.  *See Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.—San Antonio 2013, pet. ref'd) (noting "[t]he location or place where the sexual abuse was committed is not an element of the offense.").  In other words, since at least some of the elements of the continuous offense under § 21.02 occurred in Comal County, venue was proper in Comal County.  *Id*. at 506 (noting that "[w]hen conduct constituting a single offense is committed in more than one county, venue under the general venue rule is proper in any of those counties.").

For this reason, counsel cannot be found ineffective for failing to file what would have been a frivolous attack on venue.  *See Miller*, 714 F.3d at 904 n.6 (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance").  Petitioner therefore has not shown counsel's performance was deficient or prejudicial, or that the state court's denial of this claim was an unreasonable application of *Strickland*.  Relief is denied.

---

[23]     ECF No. 14 at 35-40.

5.      Cumulative Error (Claim 7)

In his last IATC claim, petitioner contends he is entitled to federal habeas relief based on the "totality of errors" committed by trial counsel.[24]  To support this assertion, petitioner points to the IATC claims he raised on direct appeal and in this proceeding, as well as the affidavit attached by trial counsel to his motion for new trial wherein he claimed to be ineffective.  As with his previous IATC claims, petitioner raised this "cumulative error" claim in his state habeas application.  In rejecting his allegations, the state habeas trial court found:[25]

4.      [Petitioner] and his claims are not credible.

5.      There was overwhelming evidence of [petitioner]'s guilt at trial, including the testimony of two separate child victims, numerous other witnesses and circumstantial evidence, incriminating statements [petitioner] made to his daughter, and [petitioner]'s non-credible testimony which the jury plainly rejected; [petitioner]'s case was equally or even more "hopeless" than cases like *Curtis v. State*.  *See* 500 S.W.2d 478, 481-82 (Tex. Crim. App. 1973).

6.      Considering the totality of his representation, [petitioner]'s trial counsel zealously and effectively represented [petitioner] in [petitioner]'s essentially "hopeless case."

7.      [Petitioner]'s trial counsel even attempted to "throw himself under the bus" by submitting an affidavit attached to [petitioner]'s motion for new trial, claiming that he was ineffective.  After a hearing on said motion during  which both [petitioner]'s trial and appellate counsel appeared, developed a record, and advocated for [petitioner]'s motion, this Court denied said motion, and the Third Court of Appeals

---

[24]      ECF No. 14 at 42.

[25]      ECF No. 11-36 at 8-9.

rejected complaints [petitioner] attempted to raise on direct appeal related to said motion.

8.    [Petitioner] has not established deficient performance or prejudice.

9.    [Petitioner] has not established any right to relief, on any of his claims.

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state courts' factual findings. Nor has petitioner shown that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law. This is because the United States Supreme Court has never squarely held that errors that do not individually provide a basis for habeas relief can provide a basis for relief if cumulated. *See Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992) ("That the constitutionality of a state criminal trial can be compromised by a series of events none of which individually violated a defendant's constitutional rights seems a difficult theoretical proposition and is one to which the Supreme Court has not directly spoken.").

Further, the Fifth Circuit Court of Appeals has held:

> [F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of *constitutional dimension* rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Id.* at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Because none of the errors alleged by petitioner constituted a violation of his right to the effective assistance of counsel, the "cumulation" of these errors does not provide a basis for relief. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). Federal habeas corpus relief is therefore unwarranted.

**D.**   **Double Jeopardy** **(Claim 8)**

In his final claim for relief, petitioner asserts that his right against double jeopardy was violated.[26]   Citing the fact that the two predicate acts of abuse against Amy alleged in Count I (continuous sexual abuse of a child) were the same as the offenses alleged in Count II (aggravated sexual assault) and Count III (indecency with a child by contact), petitioner contends he was charged twice for the same offenses and thus placed in jeopardy twice.   Because he was ultimately acquitted of Count II, petitioner also contends that double jeopardy prohibits his punishment under Count I. These allegations were rejected by the Texas Court of Criminal Appeals during petitioner's state habeas proceedings.   Petitioner fails to demonstrate that this decision was contrary to, or an unreasonable application of, clearly established federal law.

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."   U.S. CONST. amend. V.   This clause protects against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.   *United States v. Dixon*, 509 U.S. 688, 695-96 (1993).   In the multiple-punishment context, the Double Jeopardy Clause protects only against the imposition of multiple criminal punishments for the same offense.   *Hudson v. United States*, 522 U.S. 93, 99 (1997).

None of the above scenarios apply here.   Petitioner was not subjected to a second prosecution for aggravated sexual assault after he was acquitted of Count II—indeed, he was only subjected to a single prosecution that was disposed of in a single trial.   Nor was he subjected to a second prosecution for continuous sexual abuse after he was convicted on Count I.   And considering petitioner was only subjected to a single punishment for one offense, a life sentence for his conviction on Count I, he was not assessed multiple punishments for the same offense.

---

[26]       ECF No. 14 at 49-53.

Similarly, petitioner's double jeopardy rights were not violated simply because he was acquitted of aggravated sexual assault against Amy in Count II. According to petitioner, he is being punished for an offense he was acquitted of because the offense (aggravated sexual assault) was one of the predicate acts of abuse against Amy alleged in Count I, of which he was ultimately convicted. But petitioner fails to acknowledge that there were two other predicate acts of abuse alleged in Count I—indecency with a child by contact against Amy, and indecency with a child by contact against Jill. Even without the first predicate offense of aggravated sexual assault, the jury still could have concluded that petitioner committed "two or more acts of sexual abuse" against Amy and Jill to constitute an offense under the continuous-sexual-abuse statute. *See* Tex. Penal Code § 21.02(b)(1) (stating a person commits an offense if, during a period of 30 days or more, the person "commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims.").

Petitioner thus fails to show that his conviction violated the Double Jeopardy Clause, much less that the state court's rejection of this claim was unreasonable. Relief is denied.

## V. <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the

issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## VI.  Conclusion and Order

After careful consideration, the Court concludes that petitioner failed to establish that the state court's rejection of his claims on the merits was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during his state trial, direct appeal, and habeas corpus proceedings.  As a result, petitioner's federal petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and petitioner Richard Charles Schmidt's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 24th day of June, 2026.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE